**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-25647-GAYLES**

**BRAULIO ENRIQUE SUAZO GOMEZ,**

**Plaintiff,**

**v.**

**MSC CRUISES, S.A.,**

**Defendant.**
_____________________________/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant MSC Cruises, S.A.'s Motion to Dismiss and Compel Arbitration ("Motion"). [ECF No. 4]. Plaintiff Braulio Enrique Suazo Gomez filed a Response in Opposition to the Motion, [ECF No. 6], to which Defendant filed a Reply, [ECF No. 10]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is **GRANTED**.

On May 28, 2023, Plaintiff, a Honduran national, signed a Seafarer Employment Contract ("Employment Contract") to work as a Floor Runner aboard the ship *MSC Seascape*. [ECF No. 4–1]. The Employment Contract was also signed by MSC Malta Seafarers Co. Ltd., as Plaintiff's employer, and MSC Cruise Management (UK) Ltd., as the shipowner. *Id.* By signing the Employment Contract, Plaintiff "agree[d] that all rights and obligations contained in the Collective [Bargaining] Agreement between MSC Malta Seafarers Co. Ltd. and FEDERAZIONE ITALIANA TRANSPORTI – CISL – ITF INTERNATIONAL DEPARTMENT – Italy," (the "CBA"), "apply to [his] Employment [Contract]." *Id.* The Employment Contract also states that the CBA's terms "shall be incorporated into and to form part of the [Employment] [C]ontract." *Id.* And Plaintiff has

"read, understood, and agreed to all terms and conditions of [the] [E]mployment [Contract] as identified in the [CBA]." *Id.*

On the other hand, the CBA stats that its terms "apply to the personnel enrolled or to be enrolled on board of" several vessels, including the *MSC Seascape*. [ECF No. 4–1, at 17]. Relevant to Defendant's Motion, the CBA's dispute resolution clause states the following:

> Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal or court proceeding as set forth in this Agreement**. It is further agreed that any and all claims from a Seafarer against the Company,[1] Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated** in accordance with the terms and conditions in this Agreement.

*Id.* at 31 (emphasis added). Plaintiff "acknowledge[s] that [he] knowingly and voluntarily waive[s] any right [he may] have to a jury trial," and that the "arbitration referred to in this Article is exclusive and mandatory." *Id.* at 31.

Following his employment, on July 24, 2026, Plaintiff commenced two parallel legal proceedings seeking damages for work-related injuries he sustained while working aboard the *MSC Seascape.* First, consistent with the arbitration clause in the CBA, Plaintiff commenced an arbitration proceeding before the London Maritime Arbitrators Association against MSC Cruise Management (UK) Ltd. and MSC Malta Seafarers Co. Ltd. [ECF No. 4–2]. In that arbitration, Plaintiff asserts claims for negligence (Count I); unseaworthiness (Count II); maintenance and cure

[1] As defined in the CBA, "the term 'Company' shall mean MSC Cruise Management (UK) Limited." [ECF No. 4–1, at 17].

(Count III); failure to provide prompt, proper, and adequate medical care (Count IV); and disability benefits under the CBA (Count V). *Id.* ¶¶ 37–74.

Second, Plaintiff filed this lawsuit against Defendant MSC Cruises, S.A. [ECF No. 1–2, Compl.].[2] The Complaint alleges that Defendant, as "the agent of [*MSC Seascape's*] owner," *id.* ¶ 11, "owned, operated, managed, maintained, and/or controlled" the *MSC Seascape*, *id.* ¶ 10. Like the claim he asserted in the arbitration proceeding, Plaintiff asserts claims here for Jones Act negligence (Count I); unseaworthiness (Count II); tortious failure to provide maintenance and cure (Count III); and failure to provide prompt, proper, and adequate medical care (Count IV). *Id.* ¶¶ 48–79.

Moving to compel, Defendant argues that it is expressly covered under Plaintiff's CBA and can compel arbitration. [ECF No. 4, Mot. at 5–7]. The Court agrees. The CBA expressly states that Plaintiff's claims against, among others, "[MSC Cruise Management (UK) Ltd.'s] vessels or the operators of such vessels . . . shall be arbitrated in accordance with the terms and conditions in this Agreement." [ECF No. 4–1, at 17]. And as alleged in the Complaint, Defendant is, at a minimum, the operator of the *MSC Seascape*, [ECF No. 1–2, Compl. ¶ 10], which is owned by MSC Cruise Management (UK) Ltd. [ECF No. 4–1].

Other courts in this District have compelled arbitration under similar circumstances. For instance, in *Presida v. MSC Cruises S.A.*, the court held that MSC Cruises, S.A., the same defendant here, "is expressly included in the Collective Bargaining Agreement's arbitration clause" because "the Agreement includes the 'Company's vessels or the operators of such vessels.'" 824 F. Supp. 3d 1277, 1283 (S.D. Fla. 2026). "As the operator of the vessel where Plaintiff was working," the court concluded, "[MSC Cruises, S.A.] is expressly included in the

[2] Plaintiff initially filed his Complaint in the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. On August 19, 2026, Defendant removed the case to this Court. *See* [ECF No. 1, Notice of Removal].

arbitration agreement." *Id.*; *Cakarevic v. Royal Caribbean Cruises, LTD.*, No. 23-21536-CIV, 2023 WL 3995597 (S.D. Fla. June 14, 2023) (compelling arbitration under similar circumstances). Same here, too. Plaintiff's "agreement[] to arbitrate will be enforced . . . By entering into a valid employment contract with an arbitration agreement, [Plaintiff] voluntarily agreed to resolve his claims before an arbitral forum, limiting his right of access to courts." *Wilson v. Carnival Corp.*, No. 23-10122, 2024 WL 1460160, at *1 (11th Cir. Apr. 4, 2024).

Seeking to escape arbitration, Plaintiff argues that he "has invoked no terms of any contract against [Defendant]" and that "[e]very duty pled in the *Complaint* arises from Jones Act and general maritime law, not from the [Employment Contract] (or the CBA)[.]" [ECF No. 6, Res. in Opp. at 12] (emphasis in original). But this argument misses the point. The underlying arbitration clause in Plaintiff's CBA is broad enough to encompass "any and all claims from" Plaintiff, "including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction[.]" [ECF No. 4–1, at 31].

Accordingly, it is **ORDERED AND ADJDUGED** as follows:

1. Defendant's [4] Motion to Compel Arbitration is **GRANTED**.
2. The proceeding is **STAYED** pending arbitration.
3. All pending motions are **DENIED as moot**.
4. The Case shall be **CLOSED** for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of September, 2026.

**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**